IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **INES BARROS**, <br><br>   Plaintiff, <br><br> v. <br><br> **UBS TRUST COMPANY OF PUERTO RICO**, <br><br>   Defendant. | Civil No. 11-1863 (JAG/BJM) |

## OPINION AND ORDER

Inés Barros ("Barros" or "plaintiff") sued UBS Trust Company of Puerto Rico ("UBS-Trust" or "defendant") for breach of fiduciary duty in the management of the Inés Barros Trust ("the Trust"), for which defendant was the trustee. (Docket No. 1). Barros's claims arise under Articles 1077, 1802, and 1803 of the Puerto Rico Civil Code, 31 L.P.R.A. §§ 3052, 5141, and 5142, respectively. (Id.). Defendant moved to compel arbitration under chapter 1 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. (Docket No. 12). Barros opposed (Docket No. 23), defendant replied (Docket No. 31), and Barros filed a sur-reply. (Docket No. 38). This non-dispositive matter was referred to me under 28 U.S.C. § 636(b)(1)(A). (Docket No. 44). For the reasons that follow, defendant's motion to compel arbitration is **granted**.

## STANDARD ON MOTION TO COMPEL ARBITRATION

Under the FAA, "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have [civil or admiralty] jurisdiction . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Federal policy strongly favors arbitration over litigation, so long as an agreement to arbitrate exists in the first place. See HIM Portland, LLC v. DeVito Builders, Inc., 317 F.3d 41, 43 (1st Cir. 2003). Thus, "there is a presumption of arbitrability in the sense that '[a]n order to

arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" AT&T Techs., Inc. v. Communications Workers of Am., 475 U.S. 643, 650 (1986) (citation omitted); Mun'y of San Juan v. Corp. Para El Fomento Econ. De La Ciudad Capital, 415 F.3d 145, 149 (1st Cir. 2005). "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985) (emphasis in original). Thus, if neither "the making of the agreement for arbitration" nor the "failure to comply therewith" are in issue, a court must order arbitration "in accordance with the terms of the agreement." 9 U.S.C. § 4. If either "the making of the arbitration agreement or the failure, neglect, or refusal to perform the same" are at issue in the case, the non-moving party may demand a jury trial of that issue; in the absence of such a demand, the court "shall hear and determine such issue." Id.

Here, although the parties disagree about whether this dispute is within the scope of two arbitration agreements, it is undisputed that the agreements were made, and that Barros has not submitted her claim to arbitration. Therefore, it is proper to proceed to the question of whether either of the agreements mandate arbitration of Barros's claim.

## FACTUAL BACKGROUND

This action relates to the management of a trust created in June 2005 by César Carebra and his wife Helvetia Barros Valles ("the settlors"), for which Barros is the primary beneficiary ("the Trust"). (Docket No. 14-12, p. 3). The settlors designated UBS Trust as trustee. (Id., p. 13). The trustee is "obligated to maintain and conserve the Assets of the Trust" and to "retain, administer, sell, invest and reinvest the Corpus [of the Trust]." (Id., p. 14-19). In order to carry out the Trust's investments, UBS-Trust opened an investment account in July 2005 with UBS

Financial Services Inc. ("UBS-Financial") by signing an Account Application and Agreement for Trust and Estates Accounts ("Trust Account Agreement"). (Docket No. 14-13). The complaint alleges that UBS-Trust breached its fiduciary duty as trustee by failing to minimize the risk exposure of the Trust's investments and neglecting to report a conflict of interest with its investment in the Puerto Rico Fixed Income Fund II, Inc., which led to a net loss of $212,631.36, or approximately 44 percent of the original worth of the Trust's corpus, by October 2010, when UBS-Trust resigned as trustee. (Docket No. 1, p. 4-7).

In September 2006, Barros signed an Account Services Selection Agreement with UBS-Financial (hereinafter "Individual Account Agreement") in order to upgrade her individual investment account, which she first opened with UBS-Financial's predecessor in 1988. (Docket No. 14-1; Docket No. 23-1). Both UBS-Financial and UBS-Trust are indirectly owned by UBS AG: UBS AG owns UBS Americas Inc., and UBS Americas Inc. owns both PaineWebber International Inc. and UBS Financial Services, Inc. PaineWebber International Inc. owns UBS Trust Company of Puerto Rico (UBS-Trust), and UBS Financial Services, Inc. owns UBS Financial Services Incorporated of Puerto Rico (UBS-Financial). (Docket No. 31-1).[1]

## DISCUSSION

Barros's claims rest on the alleged breach of fiduciary duty by UBS-Trust as trustee of the Trust. (Docket No. 1). UBS-Trust contends that Barros is bound by the arbitration provisions of both the Individual Account Agreement she signed with UBS-Financial and the Trust Account Agreement that UBS-Trust signed with UBS-Financial. (Docket Nos. 12, 31). I need only consider the first of these arguments. The Individual Account Agreement provides:

**BY SIGNING BELOW I UNDERSTAND ACKNOWLEDGE AND AGREE**

---

[1] Barros contends that this evidence should be disregarded because it was submitted for the first time in reply. (Docket No. 38, p. 3 n.3). But under Local Rule 7(c), replies may address "new matters raised in the objection or opposing memorandum." Barros argued there was no evidence of UBS-Trust's affiliation with UBS-Financial. (Docket No. 23, p. 5-6). Defendant was thus permitted to rebut that contention.

. . .

> C      that in accordance with the last paragraph of the Master Account Agreement entitled "Arbitration" I agree in advance to arbitrate any controversies which may arise with *among others* UBS Financial Services in accordance with the terms and conditions outlined therein

(Docket No. 14-5, p. 5) (italics added, emphasis otherwise as in original). The Master Account Agreement, in turn, states that "[t]his agreement ("Agreement") contains the terms and conditions governing your brokerage Account with UBS Financial Services Inc. opened herewith and any other accounts you opened with UBS Financial Services . . . ." (Id., p. 7). Its "Arbitration" clause provides, in relevant part, that:

> **You agree, and by carrying an account for you UBS Financial Services Inc. agrees, that any and all controversies which may arise between you and UBS Financial Services Inc. concerning any account(s), transaction, dispute or the construction, performance, or breach of this or any other Agreement, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.**

(Id., p. 15) (emphasis in original). In the Master Account Agreement, "'UBS Financial Services Inc.' means UBS Financial Services Inc., its successor firms, subsidiaries, correspondents and/or affiliates, including without limitation, its parent company, UBS AG, and/or its clearing broker, UBS Financial Services, Inc., and all other subsidiaries or affiliates." (Id., p. 7). The uncontested evidence establishes that UBS-Trust is such a subsidiary. Therefore, UBS-Trust is entitled to invoke this arbitration clause.

Barros argues that the instant claim falls outside the clause's scope for three reasons: (1) her relationship with UBS-Trust is not an "Agreement" within the meaning of the Individual Account Agreement, (2) she never intended to arbitrate any disputes with UBS-Trust, and (3) the terms of the Individual Account Agreement only affect disputes related to the brokerage account. (Docket No. 23, p. 6-7).

"Whether or not the parties have agreed to submit a certain dispute to arbitration 'depends on contract interpretation, which is a question of law.'" Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 376 (1st Cir. 2011) (quoting Combined Energies v. CCI, Inc., 524 F.3d 168, 171 (1st Cir. 2008)). "Arbitration is strictly 'a matter of consent' . . . and thus 'is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.'" Granite Rock Co. v. Int'l Bhd. of Teamsters, 130 S.Ct. 2847, 2857 (2010) (emphasis in original, citations omitted). The construction of arbitration agreements under the FAA "must be resolved according to federal law," and "is ordinarily a function of the parties' intent as expressed in the language of the contract documents." McCarthy v. Azure, 22 F.3d 351, 355 (1st Cir. 1994). Relevant state law, particularly that which was selected in a rational choice-of-law clause, informs this analysis. See id. at 356 & n.5. The agreement selects New York law to govern the dispute. (Docket No. 14-5, p. 15). "Where the document makes clear the parties' over-all intention, courts examining isolated provisions 'should then choose that construction which will carry out the plain purpose and object of the [agreement].'" Kass v. Kass, 91 N.Y.2d 554, 567 (N.Y. App. 1998) (quoting Williams Press, Inc. v. State, 37 N.Y.2d 434, 440 (1975)). Importantly, "provisions in a contract are not ambiguous merely because the parties interpret them differently . . . ." Mount Vernon Fire Ins. Co. v. Creative Hous. Ltd., 88 N.Y.2d 347, 352 (1996).

According to Barros, the capitalized term "Agreement" in the Individual Account Agreement's arbitration clause restricts its application to brokerage agreements. To that end, she points to the introduction of the Master Account Agreement, which states: "This agreement ("Agreement") contains the terms and conditions governing your brokerage Account with UBS Financial Services Inc. opened herewith and any other account you opened with UBS Financial Services in connection with the assignment of this Agreement or otherwise (Accounts)." (Docket

14-5, p. 14). Barros thus contends that she only agreed to arbitrate "controversies . . . concerning . . . this or any other [brokerage] Agreement," meaning only accounts with UBS Financial.

But "[a]bsent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration." EEOC v. Waffle House, Inc., 534 U.S. 279, 289 (2002). The language of the arbitration clause does not present any ambiguity permitting Barros's interpretation. Adding chevrons and numerals to illustrate the clause's sentence structure, it must be read to state:

> You agree, and by carrying an account for you UBS Financial Services Inc. agrees, that any and all controversies which may arise between you and UBS Financial Services Inc. concerning any «(1) account(s)», «(2) transaction», «(3) dispute» or «(4) the «(a) construction», «(b) performance», or «(c) breach» of this or any other Agreement, whether entered into prior, on or subsequent to the date hereof», shall be determined by arbitration.

(Id., p. 23). In other words, since the clause is phrased disjunctively, it encompasses a reading where "any and all controversies which may arise . . . concerning any . . . dispute . . . shall be determined by arbitration." Because Barros's breach-of-fiduciary-duty claim is a "controversy" that has arisen concerning a "dispute" with UBS-Trust, an affiliate of UBS-Financial, arbitration is mandatory.

Alternatively, Barros contends that even if the langauge of the arbitration clause itself is broadly construed, its reach must be circumscribed by the scope of the "Agreement" overall. (Docket No. 38, p. 5-6). The "Agreement," as defined in the introduction of the Master Account Agreement, "contains the terms and conditions governing [Barros's] brokerage Account with UBS Financial . . . opened herewith and any other account . . . with UBS Financial . . . ." (Docket 14-5, p. 14). Barros argues that since the arbitration clause is a term and condition of this "Agreement," it can only reach disputes over the object of the contract, namely any of Barros's brokerage accounts with UBS-Financial. (Docket No. 38, p. 5-6). But this reading is not

compelled by the text, and would render the expanisve language in the arbitration clause meaningless. Rather, the contract should be construed such that the reciprocal promises for UBS-Financial to provide brokerage services to Barros include Barros's promise to arbitrate *all* controversies between Barros and *any* UBS-related company. In short, the contract expressly contemplates Barros arbitrating her non-brokerage disputes with UBS-Financial's affiliates.

Barros's *post hoc* declaration that "it was not [her] intention to arbitrate any and all disputes that may arise against UBS Financial Services or its affiliates for their failure to discharge fiduciary duties" is irrelevant. (See Docket No. 23-1, ¶ 7). Absent some ambiguity in a contract, its terms must be given effect as they were written without considering extrinsic evidence. Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). No ambiguity is evident here.

In sum, Barros's agreement with UBS-Financial included a promise to arbitrate all disputes with UBS-Trust. The instant suit must therefore be referred to arbitration in accordance with the terms of her agreement with UBS-Financial.

## CONCLUSION

For the foregoing reasons, the motion to compel arbitration is **GRANTED.**

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of September, 2012.

                        *S/ Bruce J. McGiverin*
                        BRUCE J. McGIVERIN
                        United States Magistrate Judge